

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| DAVID A. KLINE, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **WD76228** |
| | ) | |
| STATE OF MISSOURI, | ) | **FILED: April 15, 2014** |
| Respondent. | ) | |

### Appeal from the Circuit Court of Buchanan County
### The Honorable Daniel F. Kellogg, Judge

### Before Division Two: Gary D. Witt, P.J., and Lisa White Hardwick and Alok Ahuja, JJ.

Appellant David Kline pleaded guilty to the felony of sodomy in the Circuit Court of Buchanan County on February 4, 2011, and was sentenced to an eight-year term of imprisonment. Kline filed a motion for post-conviction relief under Supreme Court Rule 24.035. Kline's motion claimed that his counsel was ineffective for failing to enforce a plea agreement under which Kline's sentence for the Missouri offense would have run concurrently with sentences he received in federal and state courts in California. The circuit court denied relief following an evidentiary hearing. Kline appeals. We affirm.

### Factual Background

On January 17, 2002, the Buchanan County Prosecuting Attorney charged Kline with sodomy under § 566.060.2, RSMo Cum. Supp. 1993. At the time, Kline was also facing unresolved charges in federal and state courts in California.

Kline's federal public defender contacted Buchanan County prosecutors, as well as state prosecutors in California, in an attempt to negotiate a global resolution of the charges pending against Kline in all three jurisdictions. Kline wanted to avoid serving any time in state prison. His federal public defender therefore worked to ensure that his sentences would run concurrently, and that service of Kline's federal sentence would be sufficient to satisfy the sentences to which state prosecutors would agree.

On December 10, 2003, Kline's federal public defender received the following letter from a Buchanan County Assistant Prosecuting Attorney:

> I am writing in response to your request for a plea offer in State of Missouri v. David Kline. I will offer the defendant an 8 year sentence concurrent to any other sentence he will receive previous to his return to Missouri.
>
> You, of course, must see that the federal system and California state system will allow his return to Missouri for the execution of the agreement.

Kline's federal public defender showed him this letter. The federal public defender testified by affidavit that he "had no doubt that [Kline] reasonably relied on such representations when accepting the global plea agreement which resulted in his incarceration in the Federal Bureau of Prisons."

Kline pleaded guilty in federal court pursuant to an agreement under which he would receive a ten-year sentence. The ten-year federal sentence was sufficient to ensure that Kline would serve enough time to satisfy both his Missouri and California state-court sentences (assuming the sentences ran concurrently to one another).

After his federal sentencing, Kline appeared in the California state court, pleaded guilty, and was sentenced to a term of imprisonment to run concurrently with his federal sentence.

The Buchanan County prosecutor's December 2003 letter explicitly contemplated that Kline would "return to Missouri for the execution of the agreement." Kline's federal public

defender told him, after he pleaded guilty in federal court, that "[n]ow you need to get back to Missouri and take care of that." Kline himself testified that "I knew I had to go stand before a Missouri judge and go through the proceedings" in order to finalize the agreement with Buchanan County, and that he was prepared to do so after entering guilty pleas in the California state and federal courts. However, although Kline had been charged in Buchanan County, the State did not immediately issue a detainer. Without a detainer, the United States Marshals Service refused to transport Kline to Missouri to address the pending Buchanan County charges; Kline was instead transported to federal prison in Victorville, California.

Kline was incarcerated in Victorville for approximately three months before Missouri prosecutors issued a detainer. By the time the Missouri detainer was issued, Kline's federal case had been concluded, and Kline was no longer represented by the federal public defender that had negotiated the global plea agreement. Kline's mother contacted Buchanan County authorities to request information and assistance. The Missouri public defender's office declined to represent Kline, stating that it would only represent him if he was either in Missouri custody, or released on bond on the Missouri charges. Kline testified that, without legal assistance, he did not know how to compel resolution of the detainer and the underlying Buchanan County charges. Kline did not take any further action to dispose of the pending Missouri charges, and served eight-and-a-half years on his federal sentence, on the assumption that the time he was serving would be credited against any Missouri sentence.

Kline was extradited to Buchanan County following the conclusion of his federal prison sentence. The Public Defender's Office was appointed to represent him in 2010. Kline's Missouri counsel made repeated requests that Buchanan County prosecutors honor the 2003 plea agreement, and allow Kline's Missouri sentence to run concurrently with his (now-concluded)

3

federal sentence. Buchanan County prosecutors were unwilling to agree, however, that Kline should receive credit, or a shorter Missouri sentence, based on the time he had previously served in the federal correctional system. Consistent with the 2003 agreement, prosecutors would only agree to recommend eight years' imprisonment, and to not file additional charges.

Ultimately, Kline's plea counsel advised him to accept the State's offer of eight years' imprisonment, with no adjustment based on the time Kline had previously served in federal prison. On February 4, 2011, Kline appeared before the circuit court and entered a plea of guilty to the felony of sodomy. At the plea hearing, Kline's counsel made the following statement:

> I would just like to put on the record, as the prosecutor had alluded to, that Mr. Kline has already served nine years with the Federal Department of Corrections, and at that time that he had pled guilty in California, he had assumed, and was even encouraged, I guess by his attorney at the time, that all of the jurisdictions with charges were on board with the plea agreement.
>
> So it came as a shock to Mr. Kline whenever he was brought back to Missouri and placed in the Buchanan County Jail, because he had thought that he had already done the eight years concurrent with his federal time.
>
> I would just like – and I just want that on the record, Your Honor, because Mr. Kline is, again, accepting the offer and pleading guilty here today.

The court responded, "I understand what you may have been led to believe. Unfortunately, that wasn't by anybody, I don't believe, in this room. So I'm sorry that that's what happened."

The prosecution recommended that Kline receive an eight-year sentence, which the circuit court imposed.

Kline was delivered to the Department of Corrections on February 8, 2011, and filed a *pro se* Rule 24.035 motion for post-conviction relief on August 1, 2011. Appointed counsel filed an amended motion on September 18, 2012. As relevant here, the amended motion alleged that Kline's plea counsel "was ineffective in failing to enforce a written plea agreement calling for concurrent sentencing with a federal criminal case arising out of California and a California state

4

criminal case, in which Movant would have served the sentence in the underlying criminal case in the Federal Bureau of Prisons."

The circuit court held an evidentiary hearing on Kline's amended motion on December 17, 2012, at which Kline's plea counsel testified, and Kline's testimony was received by deposition. The circuit court entered a judgment denying Kline post-conviction relief on March 4, 2013. With respect to the claim Kline raises on appeal, the circuit court found:

> Movant claims to have had a plea agreement for concurrent time on this case with his Federal and California convictions. He faults his *Missouri* trial counsel [for] failing to effectuate this plea agreement. The fallacy with this argument is that the plea agreement could not be implemented until Movant submitted to the jurisdiction of the Missouri courts and entered a plea of guilty. It was not the fault of his Missouri trial counsel that Movant did not return to Missouri and plead guilty until after serving out his sentences in the other cases. Any claim of ineffective assistance of counsel lies with his Federal Public Defender, whom Movant alleges told him (Movant) that the Missouri sentence would run concurrent to the other sentences.

> In addition, trial counsel and the court acknowledged Movant's misunderstanding at the plea/sentencing hearing. Nevertheless, Movant persisted in entering a plea of guilty.

This appeal follows.

## Standard of Review

> This Court limits its review of the overruling of a Rule 24.035 motion to whether the motion court's findings of fact and conclusions of law are clearly erroneous. The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made. Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling.

*Stanley v. State*, 420 S.W.3d 532, 539 (Mo. banc 2014) (citations and internal quotation marks omitted).

## Analysis

Kline was entitled to the effective assistance of counsel during the process which led to his guilty plea and sentencing. "The reality is that plea bargains have become so central to the

5

administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("During plea negotiations defendants are entitled to the effective assistance of competent counsel." (citation and internal quotation marks omitted)).

Kline argues that plea counsel was ineffective because counsel had a meritorious basis to move for specific performance of the 2003 plea agreement negotiated by his federal public defender, but failed to do so. Kline contends that, if his Missouri plea counsel had moved to enforce the 2003 plea agreement, he would be serving less time – or *no* additional time – on his Buchanan County conviction. We disagree.

Generally, "the State can withdraw a plea offer, even an accepted plea offer, at any time prior to the entry and acceptance of the plea by a trial court." *Frye v. State*, 392 S.W.3d 501, 505-06 (Mo. App. W.D. 2013) (collecting cases). Even though his plea had not yet been accepted by a Missouri court, Kline argues that the State was bound by the 2003 agreement, because Kline had relied on the plea agreement, in a manner that was foreseeable to Buchanan County prosecutors, when he pleaded guilty to separate charges in the California state and federal courts.

We need not decide whether the plea agreement reflected in the December 10, 2003 letter was binding on the State. Even if the agreement was binding, the State did not violate it.

At Kline's guilty plea and sentencing hearing in February 2011, the prosecutor stated that she was recommending that Kline receive an eight-year sentence because she considered herself bound by the earlier plea agreement. The prosecutor explained:

6

> This plea offer was extended back in '02 by a different Assistant Prosecutor when they were trying to wrap up the cases with the federal case in California and the California [state-court] case. So we are being bound by this plea offer since it was extended in '02.

Besides agreeing to recommend an eight-year sentence, in the December 2003 letter Buchanan County prosecutors also agreed to recommend that Kline's Missouri sentence be served concurrently with his California sentences. By the time Kline was actually sentenced in Buchanan County in 2011, however, it was impossible for Kline's Missouri sentence to run concurrently with his California sentences for a simple reason: he had already fully served the California sentences.

A criminal sentence in Missouri can only run "concurrently" with another sentence if the two sentences are running, in whole or in part, at the same time. Section 558.026.3, RSMo provides that "[a] court may cause any sentence it imposes to run concurrently with a sentence an individual *is serving or is to serve* in another state or in a federal correctional center." (Emphasis added.) The emphasized language makes clear that a Missouri sentence cannot run concurrently with a sentence imposed by another State or by a federal court unless the non-Missouri sentence is being served at the time of the Missouri sentencing, or is to be served in the future.

A Missouri criminal sentence cannot be made concurrent with another sentence retroactively; to do so would be equivalent to having the sentence commence before it was even imposed. Section 558.031.1, RSMo forecloses this outcome: it provides that "[a] sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections or other place of confinement where the offender is sentenced."

In *State ex rel. Lightfoot v. Schriro*, 927 S.W.2d 467 (Mo. App. W.D. 1996), we held that a criminal sentence could not be made concurrent, retroactively, with an earlier sentence.

7

*Lightfoot* held that a defendant was not entitled to credit on a Missouri sentence for time served

on a Kansas sentence *prior to the defendant's Missouri sentencing*, even though the defendant's

Missouri sentence specified that it was to be "served concurrently to the sentence or sentences he

is serving in the State of Kansas." *Id.* at 471. We explained:

> [T]he well-accepted rule is that the commencement of a sentence is by operation of law and that the judge has *no authority* to make the sentence commence retroactively. . . .
>
> . . . .
>
> This is also the approach taken by the limited number of decisions we have been able to find on this issue in other jurisdictions. These cases hold that, even if two sentences are made to be concurrent, a subsequent sentence does not relate back to a prior sentence for purposes of computing credits and the term of confinement. In addition, 24 C.J.S. *Criminal Law* § 1582 at 173 (1989), states:
>
> > Where sentences imposed at different times or for different periods of time run concurrently, the sentences run together during the time that the periods overlap. . . . [T]he prisoner is not entitled to credit on the later sentence for the period served prior to such sentence, particularly where the sentences are imposed by different courts in different jurisdictions.
>
> This approach makes sense. As noted in Black's Law Dictionary, "concurrent" is defined variously as running together, simultaneous, acting in conjunction, and existing together. By definition, the Missouri sentence did not exist together, simultaneously with, or in conjunction with the portion of the Kansas sentence which was served before the Missouri sentence was even imposed.

*Id.* at 473 (other citations omitted); *accord*, *State ex rel. Gater v. Burgess*, 128 S.W.3d 907, 912

(Mo. App. W.D. 2004) ("Since Mr. Gater's sentence for the 1992 conviction was completed

before he was convicted for the 1999 drug trafficking, the circuit court could not have ordered

that he serve the sentences concurrently.").[1]

---

[1] Separate from the concept of concurrent sentences, Missouri law also allows a defendant to receive credit in certain circumstances for time served prior to his sentencing. *See*, *e.g.*, § 558.031.1, RSMo. Kline does not argue for such pre-sentence credit, however. And at least as a general proposition, a defendant is not entitled to credit against a later-imposed sentence for time served on a separate, earlier criminal sentence, because the inmate "would have been in prison anyway" on the earlier sentence,

8

Therefore, at the time of Kline's Buchanan County guilty plea and sentencing, there were no California sentences with which Kline's Missouri sentence could run concurrently. A motion by his plea counsel to enforce the concurrent-sentencing aspect of the 2003 plea agreement would have been unsuccessful; that portion of the agreement was moot in 2011, because Kline had already fully served his California sentences. "Counsel is not ineffective for failing to file a meritless motion." *Baumruk v. State*, 364 S.W.3d 518, 529 (Mo. banc 2012) (citation omitted). The circuit court did not clearly err in denying Kline post-conviction relief.

It is also significant that, at the time he pleaded guilty, Kline was aware that the prosecution, and the circuit court, did not intend to adjust his Missouri sentence due to the time he had previously served in California. Kline chose to plead guilty nonetheless. This is not a case in which Kline pleaded guilty based on a misconception as to the material facts or law.

Kline may have legitimate complaints concerning Missouri's delay in filing the detainer that was necessary to authorize his travel to Buchanan County to address the sodomy charge, and concerning the failure of his federal public defender, and the Missouri public defender system, to assist him in forcing an early resolution of the Missouri charges. But none of these matters are asserted as a basis for post-conviction relief in Kline's Rule 24.035 motion. Instead, that motion alleges only that Kline's plea counsel – who was not even appointed to represent him until 2010 – was ineffective for failing to move to enforce the 2003 plea agreement. As explained above, however, by the time plea counsel was appointed the die was already cast: in 2010 and 2011 it was impossible for Kline to receive the concurrent sentencing which Buchanan County prosecutors had offered in 2003.

---

irrespective of the pendency of the second charge. *Dykes v. Mo. Dep't of Corrections*, 325 S.W.3d 556, 562 (Mo. App. W.D. 2010) (citation and internal quotation marks omitted).

In 2003, the State would apparently have been satisfied if Kline served a total of eight years in prison. Kline may now end up serving twice that. We are troubled that Kline may be subject to this extended incarceration only because he did not have the assistance of counsel to secure his early return to address the Missouri charges, and was unable to navigate the intricacies of the state and federal criminal justice systems on his own. In 2011 Kline did not have an *enforceable legal right* to credit on his Missouri sentence for the time he had previously served in federal prison. Nevertheless, Buchanan County prosecutors, and the circuit court, may have been able to exercise their charging and sentencing discretion to approximate the result Kline would have achieved if he had been sentenced in Missouri without delay in 2003. We do not possess similar discretion.

## Conclusion

The circuit court's judgment, denying Kline's motion for post-conviction relief, is affirmed.

_____
Alok Ahuja, Judge

All concur.